IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JENNIFER M. VANDEGRIFT :
:
      Plaintiff,      :       Hon. Joseph H. Rodriguez
:
v.       :       Civil Action No. 07-2623
:
WILLIAM J. BOWEN, et. al., :
:       OPINION
      Defendants.      :

Presently before the Court are three separate motions filed by the parties. First, Defendant the City of Margate ("Margate") [32] moves to dismiss two counts in the complaint pursuant to Fed.R.Civ.P. 12(c). Second, Third Party Defendant The Atlantic County Joint Insurance Fund ("JIF") [39] moves to dismiss the third party complaint pursuant to both Rules 12(b)(6) and (c). In the alternative, JIF seeks to compel arbitration. Finally, Plaintiff Jennifer Vandegrift seeks to intervene [48] in the third party complaint as a matter of right, pursuant to Fed.R.Civ.P. 24(a). The Court has reviewed the written submissions of the parties and heard oral argument on the motions on May 18, 2009.

However, on June 11, 2009, the parties participated in a telephone conference with the magistrate judge. The upshot was that JIF and Vandegrift consented to having their respective pending motions dismissed without prejudice and the parties agreed to resolve the coverage issues through participation in alternative dispute resolution.[1]

---

[1]As will be discussed later in greater detail, the substance of the third party complaint is the coverage dispute between Defendant/Third Party Plaintiff William Bowen and JIF. JIF has denied coverage for Bowen and has refused to provide him with a defense in this action. Plaintiff Vandegrift seeks to intervene on the coverage dispute and during oral argument it was revealed that she instituted an action against JIF in the Superior Court of New Jersey, Burlington County

Margate agreed to participate in mediation following resolution of its pending motion to dismiss, which is now the only motion before this Court. For the reasons expressed on the record during oral argument and for the reasons that follow, Margate's motion to dismiss is granted in part and denied in part.

## I.  FACTS & PROCEDURAL HISTORY

As they pertain to this motion, the relevant underlying facts of this case are relatively straightforward and can be summarized as follows. Plaintiff Jennifer Vandegrift ("Vandegrift") was the driver of a motor vehicle that was subject to a motor vehicle stop by Defendant William Bowen ("Bowen"), a police officer employed by Margate. (Compl. ¶ 7). During the course of the motor vehicle stop Bowen asked Vandegrift for her telephone number and also requested that she remove her undergarments and give them to him. (Id. at ¶8 ). Vandegrift gave Bowen her phone number and explained that she was not wearing any undergarments. (Id. at ¶¶ 8-9). After this exchange, Bowen permitted Vandegrift to leave the scene without issuing any traffic offense tickets even though she was visibly intoxicated. (Id. at ¶ 9).

Later that evening, Vandegrift was again stopped by a police patrol car in the neighboring town of Ocean City, New Jersey and was arrested for driving under the influence. (Id.)  Shortly after her release, Vandegrift received a phone call from a caller who eventually identified himself as Bowen. (Id. at ¶ 10). Bowen called again the following morning. (Id. at ¶ 11.) During these phone calls Bowen made sexually explicit

---

vicinage, seeking a determination of coverage. That action, per the parties, is at the summary judgment stage with a determination on the summary judgment motion expected soon. However, during the telephone conference with the magistrate judge, Vandegrift advised that she intends to move for a stay of the state court action.

overtures towards Vandegrift and propositioned her for sex. (Id. at ¶ 10). She filed a Notice of Tort Claim alleging a violation of her civil rights and emotional distress. (Id. at ¶ 12). The Cape May County Prosecutor and the City of Margate conducted an investigation which resulted in the filing of administrative charges against Bowen. (Id. at ¶ 13). The administrative hearing resulted in the recommended termination of Bowen; Bowen appealed and the parties agreed to give Bowen the option to resign and he did so. (Id. at ¶ 14). This lawsuit followed.

There are several counts in the original complaint that seek to impose liability upon Margate. However, Margate moves for dismissal only as to Count VI and Count X in part.

## II. DISCUSSION

A.  Standard on a Motion to Dismiss Under Rules 12(b)(6) and 12(c)

A motion for judgment on the pleadings under Rule 12(c) is considered using the same standards as when considering a motion to dismiss under Rule 12(b)(6). Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6); see In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are

"enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration. Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). A district court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). Moreover, these allegations and inferences must be viewed in the light most favorable to the plaintiff. Id. However, a court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness," Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005)) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")

It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007). Instead, the court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

-4-

B. Motion of Margate pursuant to Fed.R.Civ.P. 12(c)

    1. Count VI City of Margate Violation of N.J.S.A. 10:5-4

Count VI claims that Bowen "violated the provisions of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq." and that Margate "failed to adequately train, supervise and discipline Defendant Bowen and other police officers who engage in acts of sexual misconduct towards members of the public based upon sex." At the outset, Margate candidly states that the impetus for filing this motion was to discern whether Plaintiff is pursuing a *vicarious* liability claim. But, in her opposition brief, Plaintiff clarified the contours of this count, contending that Margate is directly liable for "failure to take appropriate and mandatory actions needed to protect female citizens from acts of sexual discrimination and harassment by members of its police force." Pl. Opp. Br. pp. 5-6. Plaintiff does not seek to hold Margate *vicariously* or *strictly* liable. Id. Rather, as a place of public accommodation as defined by NJLAD, 10:5-1 et seq., the complaint charges that Margate is a direct and proximate cause of Plaintiff's harm because of its failure to train, discipline and supervise its officers with respect to sexual misconduct.

In relevant part, Count VI states:

> 36. Defendant City of Margate Police Department is a place of accommodation as defined by New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 et seq.
> 37. Defendant City of Margate failed to adequately train, supervise and discipline Defendant Bowen and other police officers who engaged in the acts of sexual misconduct towards members of the public based upon sex. Additionally, the Defendant City of Margate failed to implement practices, procedures and policies that would deter its police employees from discriminating based upon sex.
> 38. As a direct and proximate cause of the failure of the Defendant City of Margate to take appropriate and necessary actions to prevent Bowen's acts of discrimination and sexual misconduct, Plaintiff has sustained injuries.

Thus, Count VI pleads liability under the NJLAD charging that Margate discriminated against women by failing to implement policies and procedures within its police department relating to sexual harassment of women. It is well settled that the discriminatory acts of law enforcement officers are considered public accommodation discrimination under the NJLAD. Ptaszynski v. Uwaname, 853 A.2d 288 (N.J. App. Div. 2004).

      To the extent that Plaintiff is attempting to plead a vicarious liability claim, Margate argues Count VI is akin to a municipal liability claim under 42 U.S.C. § 1983 for failure to train and argues that the count must be dismissed pursuant to Fed.R.Civ.P. 12(c).[2] However, during the course of oral argument, Margate recognized that, to the extent Plaintiff's claim is predicated upon a direct liability theory, there appears to be a trend which would permit Plaintiff's claim given the recent propagation of the Supreme Court's landmark decision in Lehmann v. Toys 'R' Us, 626 A.2d 445 (N.J. 1993) into public accommodation discrimination cases. Both parties acknowledged that the law governing public accommodation discrimination is evolving and that there may be room for Plaintiff's contention. See, e.g., Godfrey v. Princeton Theological Seminary, 952 A.2d 1034 (N.J. 2008)(recognizing that the LAD's protection extends to other settings beyond

---

    [2]Ironically, this argument implicitly validates Plaintiff's claim as actionable on a direct liability theory. While a municipality cannot be held vicariously liable under § 1983, municipal liability lays where "a plaintiff [can] show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990). To succeed, a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 689 (1978). Thus, Margate's analogy to the § 1983 liability standards has the converse implication of bolstering Plaintiff's direct liability claim.

the work place); L.W. v. Toms River Regional Schools Bd. of Ed., 915 A.2d 935 (N.J. 2007)(extending the LAD's protection to a public school setting).

Without conceding this point, Margate continues to argue for dismissal of this count for the reasons expressed in its brief.  In addition, Margate advises that it intends to move for summary judgment if the count is permitted to proceed and, in light of the recent willingness of the New Jersey Supreme Court to employ the Lehmann standards in public accommodation cases, seeks judicial guidance as to the burdens of proof sustainable in this case because there is no case law directly on point.  Thus, as defined by the parties, the issue presented is whether the NJLAD permits Plaintiff's direct liability public accommodation claim, and if so, what is the sustainable burden of proof?

The stated purpose of the NJLAD is "nothing less than the eradication of the cancer of discrimination." Dale v. Boy Scouts of Am., 734 A.2d 1196, 1208 (N.J. 1999), rev'd and remanded on other grounds, 530 U.S. 640 (2000).  The Act's plain language evidences a broad remedial goal and, therefore, the statute is to be construed liberally. Ellison v. Creative Learning Ctr., 893 A.2d 12 (N.J. App. Div. 2006).  Pursuant to the NJLAD, it is unlawful "[f]or any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof...." N.J.S.A. 10:5-12(f).

Due to the lack of precedent directly on point, the parties focus the debate on the impact of the New Jersey Supreme Court's decision in L.W., 915 A.2d 535, to this case. The underlying facts of L.W. occurred in a school setting, which the court recognized as

a place of public accommodation. Id.  Essentially, L.W. was the subject of continuous taunting, bullying and harassment by other students in the school over the course of several years.  Id.  His parents filed a complaint against the school district under the NJLAD alleging, *inter alia*, that the district "failed to take corrective action in response to the harassment that [the student] endured because of his perceived sexual orientation." Id. at 540.  On review, the New Jersey Supreme Court considered whether the NJLAD recognized a cause of action against a school district for student on student harassment and, if so, which liability standard governed plaintiff's claim.  This consideration included whether to apply the "deliberate indifference" standard prescribed by Title IX of the Educational Amendments of 1972 or the "but for" reasonableness standard fashioned by the New Jersey Supreme Court in Lehmann, but most often applied in the employment discrimination context.

      The New Jersey Supreme Court ruled that plaintiff's claim was actionable under the NJLAD and that the liability standards articulated in Lehmann, with slight modifications, governed.  Id. at 405.  The Lehmann test, as applied in L.W., required a showing that the "aggrieved student must allege discriminatory conduct that would not have occurred 'but for' the student's protected characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment, and that the school district failed to reasonably address such conduct." L.W., 915 A.2d at 547 (citing Lehmann, 626 A.2d 445) (enumerating the standard for actionable hostile work environment sexual harassment).  By implementing the liability standards of Lehmann in a public accommodation case, the New Jersey Supreme Court

unambiguously rejected application of the Title IX "deliberate indifference" liability standard. Id. The Court further reasoned that its holding was consistent with the underlying principles of the NJLAD and served to reaffirm the NJLAD's overarching goal of eliminating discrimination. Id. (citing Fuchilla v. Layman, 537 A.2d 652 (N.J. 1988)).

Plaintiff has pled a cause of action for public accommodation discrimination under the NJLAD. She has alleged that a member of the police department discriminated and/or harassed her because of her sex and treated other women in the same manner and that Margate failed to deter and/or prevent these acts. Obviously, the facts of this case are distinguishable from L.W.; the plaintiff in L.W. was the singular object of sustained and continued harassment over the course of several years whereas Plaintiff claims harassment on a singular occasion and alleges that Defendant Bowen subjected other women to similar treatment during his tenure with Margate. But these differences are not sufficient to undermine the validity of the cause of action as pled.[3] The number of discriminatory instances is immaterial as "a single incident of invidious harassment can create a hostile work environment." Taylor v. Metzger, 706 A.2d 685, 689 (N.J. 1998)(citations omitted). And the Supreme Court in Godfrey considered the acts of one harrasser toward multiple plaintiffs in a public accommodation discrimination action. Thus, L.W. is not to be narrowly construed. In light of the broad

---

[3] In an unpublished opinion, a court in this District found that L.W could be extended to any situation where a person is discriminated against in a place of public accommodation. Doe v. Schwerzler, 2008 WL 4066338, at *5 (D.N.J. August 27, 2008)("In the simplest terms, and regardless of whether plaintiff is a student or employee, plaintiff (a "person") should have the opportunity to participate in the . . . "place of public accommodation". . . without being sexually harassed . . . by [an employee of the facility]")(internal footnotes omitted).

remedial goals of the NJLAD, there is no reason that the New Jersey Supreme Court's reasoning in L.W. should not be applied here to permit the claim to proceed as pled.

With respect to the quantum of proof necessary to support this claim, Defendant's argument that the "deliberate indifference" standard applied in municipal liability cases pursuant to 42 U.S.C.A. § 1983 should govern is not wholly without merit.[4] Indeed, New Jersey courts often look to federal jurisprudence for guidance, particularly in cases where the state law at issue is modeled after well established federal counterparts. Viscik v. Fowler Equipment Co., 800 A.2d 826, 833 (N.J. 2002) ("New Jersey courts have traditionally sought guidance from the substantive and procedural standards established under federal law."); McKenna v. Pacific Rail Serv., 817 F.Supp. 498, 518-19 (D.N.J. 1993), rev'd in part on other grounds, 32 F.3d 820 (3d Cir. 1994)(New Jersey courts "generally look to cases interpreting the federal civil rights laws in construing the [NJ]LAD.")  But the New Jersey state courts have never been beholden to federal interpretation of the NJLAD and "will not hesitate to depart from federal precedent if a rigid application of its standards is inappropriate under the circumstances." L.W., 915 A.2d at 405 (quotations and citations omitted).  Such a departure is evidenced in L.W. in the rejection of Title IX's burden of proof— which is identical to the burden in § 1983 cases.

Consistent with the principles articulated in L.W. and Godfrey, the Court is

---

[4]The parties are aware that in a recent unpublished opinion, this Court declined to apply the standards in Lehmann in a public accommodation case.  Dunmore v. Franklin Twp., no.07-4438 (D.N.J., Rodriguez, July 29, 2008). However, that holding was related to a vicarious liability claim, where no direct cause of action was alleged.

satisfied that the overarching goal and the core principles of the NJLAD are furthered by application of the Lehmann liability standard to this case. L.W., 189 A.2d at 402-03; Godfrey, 952 A.2d at 1045 ("In the non-workplace setting . . . , the standard for demonstrating a prima facie case of discrimination based on acts of sexual harassment remains as was expressed originally in Lehmann"). Thus, Plaintiff will be required to demonstrate that the conduct of Bowen "would not have occurred but for [her] gender [and] was. . . severe or pervasive enough to make a . . . reasonable woman believe that . . . the conditions. . . are altered and the . . . environment is hostile or abusive." Lehmann, 626 A.2d at 453-54.

Plaintiff's complaint satisfies the Supreme Court's requirements as articulated in Twombly, 550 U.S. at 570 and judgment on the pleadings is denied as to Count VI.

2. Count X New Jersey Civil Rights Act- Punitive Damages

Margate also seeks partial dismissal of Count X, which generally claims a violation of the N.J.S.A. 10:6-1 et seq. ("NJCRA"). Specifically, Margate argues that the punitive damages component of Count X should be dismissed as a matter of law. The Court agrees.

It is well settled that the imposition of punitive damages is permissible only if "expressly authorized by statute." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 260, n.21 (1981). The NJCRA states, in relevant part:

> Any person who has been deprived of ... any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c).

The Act further provides for the assessment of a civil penalty, determined by the jury against "[a]ny person who violates the rights of another as provided in subsection (c)." Id. at § 10:6-2(e). However, there is no express provision permitting punitive damages.

Plaintiff's contention that the New Jersey Legislature's broad remedial intent in enacting NJCRA necessarily includes punitive damages is deft, but ultimately unavailing. The New Jersey Legislature has expressly authorized punitive damages awards in other remedial statues, such as the NJLAD, N.J. Stat. Ann. §§ 10:5-1 to -49, and the Conscientious Employee Protection Act, N.J. Stat. Ann. §§34:19-1 to -14. Inasmuch as the Legislature considered the availability of punitive damage awards under the NJCRA, it was free to expressly provide for this remedy. The notable absence of any such provision in the NJCRA is thus a strong indication that the New Jersey Legislature chose not to provide for punitive damages. The legislative history of the Act supports this conclusion.

Specifically, the commentary accompanying the Act plainly states that it is modeled after the Federal Civil Rights Statute, 42 U.S.C. § 1983. See N.J. Assem. Comm. State., A.B. 2073 February 19, 2004. It is well established that punitive damages are not available to plaintiffs pursuing claims against a municipality pursuant to 42 U.S.C. § 1983. City of Newport, 453 U.S. at 247. Inasmuch as the Act is intended as New Jersey's counterpart to 42 U.S.C. § 1983, it necessarily follows that punitive damages are not available against Margate under the NJCRA. See, e.g., Damiani v. West Deptford, 2008 WL 656041 (D.N.J., March 7, 2008 civil number 07-2884 (JEI)) (punitive damages not available under the NJCRA). Accordingly, the punitive damages request contained in Count X is dismissed for failure to state a claim.

## III. CONCLUSION

For the reasons stated herein and on the record during oral argument, Margate's motion to dismiss is denied as to Count VI and granted as to Count X.  By consent of the parties, JIF's motion to dismiss and Vandegrift's motion to intervene are both dismissed without prejudice.  An appropriate order will issue.

Dated: June 30, 2009

                                         /s/ Joseph H. Rodriguez
                                         JOSEPH H. RODRIGUEZ,
                                         United States District Judge